McINNIS, Judge.
The appeal in this case is from a judgment of the lower court rejecting plaintiff’s demand - for compensation not to exceed 400 weeks, at the rate of $30 per week.
For cause of action plaintiff alleges that on and for some time prior to June 8, 1951 he was employed by defendant as a log cutter, and was paid weekly wages in excess of $50 a week; that about 11:00 A.M., June 8, 1951, while in the course and scope of his regular employment as a log cutter, in Caldwell Parish, the saw became fouled in a log he was cutting, and jerked or snatched him to the ground with his body in a twisted condition, in which fall he incurred severe and permanent injuries to the bones, nerves, muscles and tissués of his back, right side and stomach, and in particular traumatic myositis of the right lower abdominal wall, and the lum-bosacral area. He further alleges that as a result of these injuries he is totally and permanently disabled to perform manual labor of any character, and particularly of the type he was performing for defendant when injured.
The answer of defendant admits that plaintiff was employed as alleged. Further answering says that plaintiff was employed to replace an injured member of a log cutting crew, and that plaintiff worked with the crew until the injured employee returned to work, at which time plaintiff’s services were no longer needed. All other allegations of plaintiff’s petition were denied. Further answering defendant affirmatively alleges that plaintiff at no time sustained an injury of any nature while in its employ, and that he did not mention having sustained any injury of any kind to his coworkers; that after plaintiff was informed that his services were no longer required, he, nevertheless, continued to report for work after June 8, 1951 for a period of three days, and evidenced his willingness and ability to continue in the duties of a log cutter; that only after it was perfectly clear that no work was available did he then allege the accident described in his petition.
In the alternative, should the court find that plaintiff did sustain an accident, which is denied, avers that plaintiff sustained only a minor strain of the right side, which was not, and is not now, in any way disabling, and that plaintiff is now, and has *679 always been, fully able to perform all the duties of a log cutter.1 '
The first question to be answered is whether or not plaintiff sustained any injury while working for defendant. Plaintiff first testified when he was called to give his deposition, in advance of the trial, for the purpose of discovery, detailing the manner in which he was injured substantially as alleged in his petition. Two men are required to work together in cutting timber, one on each end of the saw. The man working with plaintiff was a Negro, whose nick name is “Bozo”, but whose real name is Henry Bancldey. Plaintiff says that after being injured he sat down for 30 or 40 minutes, and that he told Bozo at the time he believed he had strained himself, but at that time didn’t think it was really as bad as it was. He says they cut no more logs after he was injured. The log cutting crew was transported to and from work in a company bus, and plaintiff says the crew got to Clarks about 12:30 P.M., and that he went to Dr. A. D. Mangham’s office (the company doctor) soon after he arrived’at Clarks and waited about three hours but the doctor never came to the office; that he saw the doctor the next morning, and told him of the injury and how the accident happened, and also saw the doctor the following Monday morning, and the doctor told him to go ahead and stay off for a week or so and he would probably be all right. He says that later on in July or August after he had talked to Mr. John J. McKeithon, attorney, he went to see the colored man, Bozo, to ask him if he remembered about the accident, and that he did remember the accident, and he asked him to go to talk to Mr. McKeithon, but does not know if he did. He says that he told Mr. .Lloyd Knighten, the saw filer, about the accident, when Knighten came by where he was sitting down in the woods shortly after it happened, and that he also told Mr. George Abrams of the injury the same day it happened; this was after he had tried to see the doctor; that Johnny Douglas went with him to the doctor’s office and stayed with him some three hours waiting for the doctor, and that he also told Mrs. Emma Norman, who operated the boarding' house where he was living, about the accident. He denied that he ever reported back to Mr. Abrams to go to work. He knew he was working in the place of his uncle, who had been injured, and that his uncle reported back for work June 11, 1951.
On trial of the case, some two weeks after he gave the deposition, under examination by counsel for the defendant and by the Court, he denied that he had seen and talked to Bozo. He said he went to Bozo’s house to talk to him, but did not see him, because Mr. J. D. Smith, deputy sheriff, who acted in the capacity of policeman in Clarks, an unincorporated village, ran him off.
The witness Johnny Douglas is the only witness that in any substantial way corroborates plaintiff, and he has only plaintiff’s word that an accident happened. This witness says that he saw plaintiff when he got-off the bus at Clarks, and that he was holding the right side of his back, and when asked what was the matter plaintiff said he got hurt out there, and asked the witness to go with him to Dr. Mangham’s office, which he did, and they waited some, three hours, but the doctor never came to his office. Plaintiff did not tell him.how he got hurt, though they were together, talking for some three hours.
Mrs. Norman says he left the jjoarding house on June 11, 1951, and that he told her he had been hurt, but not how it happened, before he left, but she is uncertain, as to the day he told her. On June 11th, plaintiff went to'the home of his sister, Mrs. Lula McDowell, and her husband, Floyd McDowell. They say he walked “leant over”, and told them he had been injured. On June 16, 1951 plaintiff went to live at the home of his father and mother, Mr. and Mrs. C. C. Boyett, and they say he told them of having been injured about a week before, and that he continually complained of pains in his back and legs.
Dr. Oliver P. Mauterer, called as a wis* ness for plaintiff, says plaintiff came to him June 16, 1951, with a note from his attor *680 ney, asking “Does this man have a hernia?’1 At that time he examined him only for hernia and found none, but from the history of injury plaintiff gave him he thought there might be some back injury, however as he had been asked only to. determine if the plaintiff had a hernia he did not examine him for anything else. The doctor examined plaintiff again about April 1, 1953, and at that time he diagnosed the trouble as a right lumbo-sacral strain, but he made no x-ray examination, and therefore was unable to say whether the trouble he found was of traumatic origin or was caused by disease. This doctor says plaintiff is disabled.
For defendant, Henry Banckley (Bozo) testified that he and plaintiff worked together on June 8, 1951 until 12:00 o’clock noon, and that the saw was not at any time fouled up as plaintiff claims, and that nothing unusual happened on that day, and that at no time did he see plaintiff jerked to the ground, and that he never complained of any injury or pain. Witness says plaintiff visited his house three times but he talked to him only on the first visit. At that time plaintiff asked him to' go to Columbia and tell his lawyer that he got hurt, to which witness replied that he would not go to Columbia, and to tell the lawyer to come and he would talk to him; that plaintiff came back the following Sunday, and witness’ wife told him witness was not at home, and. sent his brother-in-law after Mr. Smith, the deputy sheriff.
Mr. Lloyd Knighten, the saw filer, says that plaintiff did not tell him on June 8, 1951, or on any other day, that he had been injured, and that he came out for work Monday morning, but his uncle had recovered and reported for work and plaintiff was not néeded.
Mr. George Abrams, foreman of the crew, says plaintiff was hired temporarily until his uncle got able to return to work, which happened June 11, 1951; that plaintiff made no complaint to him that he had been injured on June 8th, and reported for work Monday morning, but was told his uncle wss back .to work and they, couldn’t use him, but if he would stay around he would use him all he could and that some of the other foreman might have some work for him, and that plaintiff reported for work two or three mornings after that, but he had no work for him. Mr. Abrams says that about a week later he saw plaintiff in front of the cafe, and asked him how he was getting along, and- he answered, “All right, I have been to the doctor”, and when asked what was the matter with him, he said he got hurt the last day he worked, and when asked why he did not 'report his injury, said he didn’t think it would amount to anything. Some time later he saw plaintiff again, and plaintiff told him he had been to Dr. Mauterer, and the doctor told him he was not ruptured, just a strain that didn’t amount to anything, and that he was going to Mexico with Luther Black to work.
Dr. A. D. Mangham testified that plaintiff came to his office June 15, 1951, and claimed he had -been injured on June 8, 1951, and after taking a history of the claimed injury, proceeded to examine him, and found no obj ective symptoms, but plaintiff claimed his side was hurt -and he had pulled a muscle. The doctor thought it was trivial, and would be all right in a few days. The doctor says that he did not see plaintiff at any other time.
The district judge in concluding his written opinion says:
“Considerable medical testimony was - taken relative to plaintiff’s physical condition, the net effect of which was to leave in doubt whether the plaintiff suffers from any disabling injury, but . the Court will not attempt to pass upon that phase of the case for the reason it is considered that plaintiff has failed to establish the occurrence of any accident arising out of the scope of his employment to which any of his claimed injuries can be attributed. For the reason above stated, plaintiff’s claim will be denied and the suit dismissed. The suit having been filed and tried ‘in forma pauperis’, no assessment of costs will be made.”
*681 We concur fully with the conclusion of the district court. We do not believe plaintiff has established by the record in this case, the happening of any such accident as he alleges, or in fact any accident at all.
Discussion of the testimony of the medical experts, Dr. Faheam Cannon and Dr. A. D. Mangham, as to their findings is unnecessary, however it may be pointed out that these doctors found no objective symptoms leading to the conclusion that plaintiff sustained any injury, and these experts say plaintiff is not disabled. Dr. Cannon, specialist in orthopedics, made a very thorough examination of plaintiff, including x-rays, as disclosed by his testimony.
For these reasons the judgment appealed from is affirmed.